### CORTHELL v. THE STATE.

1 WHAT BILL OF EXCEPTIONS MUST SHOW.

A bill of exceptions must show that it has been filed, signed and allowed by the court and made a part of the record before it can receive the consideration of a court on appeal.

2. PROOF REQUIRED UNDER AN INDICTMENT.

It is error on the part of a court to require proof of something not alleged in an indictment or not in issue.

3. EFFECT OF A DEMURRER BEFORE MOTION.

A demurrer filed before motion to quash or a plea in abatement is presumed to admit the facts as stated in an indictment, and such motion of plea will not be allowed thereafter.

4. INSUFFICIENCY OF ALLEGATIONS.

An allegation that an explosive was in close proximity to a public highway does not conform to the statute which requires that before the same shall be ordered to be moved it must be within such distance to a residence or dwelling as to cause accident in case of an explosion, and in that case must be removed to a place of safety.

5. WHAT INDICTMENT SHOULD CONTAIN.

Every indictment should contain a complete description of the offense charged, and must in all cases contain the negative averment if the matter of such exception enter into and become a part of the description of the offense.

KING, J. (orally).

Petition to reverse judgment of court of common pleas.

Plaintiff in error was indicted under provisions of section one of an act of the general assembly, passed April 12, 1893, and was tried upon the indictment as found, and convicted and sentenced in accordance with the provisions of the statutes relating to that subject.

A motion for a new trial was made and overruled. A bill of exceptions was taken and the case brought to this court for review. The record does not show that the bill of exceptions was ever filed, signed and allowed by the court, and made a part of the record, and that being so, the errors, or alleged errors, set forth in the bill of exceptions cannot receive any consideration at our hands, if the result of that consideration was to in any wise modify the judgment of the lower court. It is necessary in order to have a bill of exceptions considered that it be allowed by the trial court and made a part of the record, and the record must show that fact. There are, however, some questions argued in connection with it that I will refer to.

The claim is made that the verdict is against the weight of the evidence, and that I dismiss; that improper evidence was admitted on the part of the state is the principal claim. Questions were asked of one of the witnesses for the state relating to his qualifications. An objection is predicated upon the statute authorizing an inspection of factories and magazines where nitroglycerine and explosives are either manufactured or stored, to be conducted under the inspection laws of the state, and under jurisdiction of the state inspector of workshops. The state inspector of workshops is required by the statute, to designate one of the

district inspectors, a man who has knowledge of explosives, as general inspector in the state of explosives in and of all factories and magazines where the same are either manufactured or stored. It is claimed that it was error for the court to admit certain evidence offered by the state that he had had experience and was a fit person to have been appointed to that position. The court admitted evidence of that kind on the part of the state and charged the jury that it must find that he was that kind of a person, and it is here urged that the testimony admitted was not competent to prove that fact. Counsel for both parties seem to agree that it was necessary for the state to prove the competency of this official. It was not prejudicial to the defendant, but it was erroneous on the part of the court to require the state to prove something that was not alleged in the indictment and prove something that was not in issue. If juries are to determine as to the qualifications of state or county officials before a man can be convicted of a violation of law, we would have a queer state of affairs. They might as well inquire into the qualifications of the prosecuting attorneys and grand jury. The statute has specifically prescribed what the course of proceeding shall be when anybody has cause to inquire into certain defects. Under section 7248, the accused may except to an indictment by: 1st, A motion to quash; 2nd, A plea in abatement, and 3d, A demurrer. A motion to quash may be made in all cases when there is a defect apparent upon the face of the record, including defects in the form of an indictment, or in the manner in which an offense is charged.

Under section 7250, a plea in abatement may be made when there is a defect in the record which is shown by facts extrinsic thereto, and under that clause a plea in abatement might be filed and under it certain things might be shown.

Under section 7253, it is provided that the accused shall be taken to have waived all defects which may be excepted to by motion to quash or plea in abatement by demurring to an indictment; so if the question of the competency of this official could have been raised at all, the right to do so was waived by filing a demurrer or pleading not guilty, so that was not a question to submit to the jury. It was none of their business whether the state inspector was qualified or not qualified. In that connection it was said or shown on the trial that he had been appointed under the statute that was repealed and the same argument applies to that. Whether he was or was not a state official is not a matter that could be referred to the jury. I only refer to these because they may become pertinent questions hereafter, and that is all I care to say about the questions which arise upon the papers presented here, called a bill of exceptions.

Before the case came to trial, defendant filed a demurrer to the indictment, and it has been argued that that demurrer should have been sustained, and we have examined the question with considerable care and looked at this indictment from all directions and are constrained to hold that the demurrer ought to have been sustained, but not for any of the reasons that have been by counsel suggested to this court.

It has been argued that this indictment was in fault, because the law did not, in any respect, authorize the finding of an indictment charging such an offense, as is here attempted to be set forth. We cannot come to this conclusion. I will refer just briefly to the statute itself. It was passed April 12, 1893, repealing section 1 of another act passed a year before which was the first statute upon that subject, passed April 15,

1892. That statute consists of two sections. The first section is as provided by act of 1893, the second remains and is still the law. The first section as amended reads:

"That the chief state inspector of workshops and factories shall appoint from among district inspectors of workshops and factories, whose appointments are now authorized by law, at least one inspector who shall be a skilled and experienced person, thoroughly conversant with the manufacture and use of powder, dynamite, nitroglycerin, fuses or other explosives and their compounds, whose duty it shall be to inspect all manufactering establishments in the state of Ohio wherein the manufacture of powder, dynamite, nitroglycerin, fuses or other explosives are manufactured, and all magazines or store houses wherein such explosives are stored, and he shall personally inspect the process of manufacture, the handling and storage of such explosives, and he may direct and order any changes or additions that he may deem necessary in or about such manufactories, magazines or store houses for the safety of the employees and the public, and when on inspection it is found that any manufactory, magazine or storehouse mentioned herein is in such close proximity with any residence or dwelling as to cause accident in case of an explosion— the said inspector may cause said explosives to be removed to a place of safety, the distance to be calculated by the quantity and quality of the explosive so stored or manufactured, and the said inspector may, with the advice of the chief inspector, advise such rules and regulations as he may deem necessary in addition to the provisions of the statute now giving authority to the inspector of workshops and factories, and his assistants, all of which shall be applicable to the places of manufactory, sale and storage of explosives named in this statute." Section 2 provides "that said inspector of workshops and factories shall enforce the provisions of this act under the same condition and penalty as applied in section 2573c of the Revised Statutes."

Before I go to the others I want to say it is clear from the reading of this statute that it is indefinite in many respects, and it is not to be wondered at that any lawyer who had not had extensive practice in criminal proceedings would be unable in the first instance to draft an indictment that would cover the offense he was seeking to charge, or the facts he was intending to prove, as within the provisions of this law, but still, as I have once said, I do not think the law is so indefinite that an offense cannot be charged under it. This statute was passed in addition to a statute in force in the state of Ohio relating to a system of inspection laws that have been passed in the last few years The section to which reference is made and under which penalties are enforced was amended in 1892, same volume of Ohio Laws, page 112, and that section provides that inspectors shall, after having faithfully inspected various places that are named in the statute, notify the owners, proprietors, agents of such establishments or factories to make alterations or changes within thirty days, and if such alterations and changes are not made within thirty days, or within such time as such alterations can be made, such proprietors, owners or agents, shall be deemed guilty of a misdemeanor, etc.

These provisions are applicable to the subsequent statute relating to nitroglycerin factories and storehouses. It may be said that if the owners or proprietors or agents of these having been so notified by the inspector did not make the alterations or make the removals required by him within thirty days, if such additions or removals could be made

within that time with the exercise of proper diligence on the part of the owners, they would be guilty of a misdemeanor.

Now this indictment charges:  " That C. S. Corthell, at the county of Sandusky, Ohio, was one of  the owners and managers of a nitroglycerin magazine, and did then and there keep on hand a large amount of nitroglycerin, and then  and there did unlawfully, knowingly and wilfully and negligently permit and suffer said nitroglycerin magazine to be and remain at an unsafe distance from a certain public highway, and a certain public building, to wit, a schoolhouse, contrary to a notice served upon the said C. S. Corthell by the state inspector of workshops and factories, which notice was dated February 28, 1895, though  more than thirty days have elapsed from  the date of said notice, and said C. S. Corthell has had sufficient time to make said  alterations in accordance with said notice of Februaray 28, 1895, to the great damage, danger, prejudice and common nuisance of the  citizens of the state of Ohio, there being and abiding."

Section 1, which I have referred to, provides that this inspector may direct and order such changes or additions as he may deem necessary in such factories or magazines for the safety of employees; he may do that in the first place;  in the second place, upon an inspection if it is found that such a concern, a nitroglycerin magazine or factory is in close proximity to the residence or dwelling or in such close proximity to a residence or building as to cause accident in case of an explosion, he may cause said explosives to be removed to places of safety.  It seems clear the pleader intended to follow the second clause relating to the removal of these explosives, the one authorizing notice to be given to the one who conducts a business where the manufactory or storehouse is within close proximity to a residence or dwelling, and not as alleged in this indictment within close proximity to a highway or schoolhouse or public building.  So that allegation in the indictment does not fully conform to  the statutes, and we haven't any power, nor has any court the power to extend by construction the language that has been placed in this statute.  The allegation that this was in close proximity to a public' highway does not conform to the statute, which requires that before such an  order can be given to remove these explosives that it must be within such distance to a residence or dwelling as  to cause accident in case of an explosion, and in that case must be removed to  a place of safety.  So far as that allegation in itself is concerned it would seem not to be proper to extend the rights of the authorities further than the statute has given permission.  Following this a little further I want to say that allegation is indefinite as well as being beyond the terms of the statute—in saying and alleging that he did  this contrary to a notice served upon him by the state inspector of workshops, which notice was dated February 28, and for more than thirty days from date of  the notice still continues to keep his magazine there.  This is indefinite because there is no  direct allegation there of any fact.  No allegation that notice was ever served on defendant.  I think further that the indictment should set forth in substance the conditions of the notice.  He should be informed by the indictment what they had notified him to do, and upon which they predicated the allegation of the offense against the laws of the state.  This it does not do.  It alleges he permitted this magazine to remain thirty days beyond the date of the notice.  This is of no importance.  The law says the notice should ask him to remove this structure or explosives within thirty days.  Thirty days after service that means, nothing else.  So the

allegations in the indictment should be specific and allege that he allowed them to remain beyond a period of thirty days after the notice to him.

After saying this much about the indictment I want to say beyond that, that so far as the bill of exceptions discloses it seems clear that an indictment framed upon the facts claimed here would be sufficient.

This statute contains two provisions with reference to what may be done; in the first instance, after inspection, an inspector may order any changes or additions that he may deem necessary in said factory, or store house, for the safety of its employees or the public. That's a very broad provision of the statute and certainly gives power to the inspector to require this for the safety of the public as distinguished from the following clause which refers to the dwelling house or residence. True, that the forepart of the statute does not refer to any removal of the explosives, but it does say he may order any change, alteration or addition which he may deem necessary for the safety of the public, and I do not see why he might not change the place of storage as well as to change the form of construction, if that be necessary for the safety of the public, and that would include, of course, those who pass along the public highway, and those who attend the public school. If such an order was made it would be entirely within the power of the grand jury to find an indictment if such order had been disobeyed for a period of thirty days.

In this connection I want to say that under the provisions of the statute to which I referred there is another provision which also ought to be noticed; that if he fails to comply with the order the inspector shall notify the owner or proprietor of such shop or factory which will include by construction a magazine or nitroglycerin factory, to make the alterations or additions necessary within thirty days, and if they are not made within thirty days from the date of said notice or "within such time as such alterations can be made with the exercise of proper diligence on the part of said proprietors or owners," said proprietors or owners so notified shall be deemed guilty of a misdemeanor. It would be necessary, in drafting an indictment under that section, to negative the fact that not only had he allowed his magazine to remain in this position, dangerous to the safety of the public for a period of thirty days, but that he also had allowed it to remain for a period longer than he might, by the exercise of proper diligence, have made the changes required in the notice of the inspector.

One or two questions upon the general provisions relating to the indictment. It is laid down in the 11th Ohio, 282, that it is a rule of criminal law, based upon sound principles, that every indictment should contain a complete description of the offense charged. That it should set forth the facts constituting the crime, so that the accused may have notice of what he is to meet, and so that the court, applying the law to the facts charged against him may see that a crime has been committed. And upon question as to negativing all of these exceptions contained in the statute, Judge RANNEY said in the 4th Ohio State, page 477: It is perfectly well settled that the indictment or information must in all cases contain the negative averment, and there is no doubt as a general rule, that some proof must be given to sustain it, where the ground of action rests upon such negative allegation or where the statute in describing the offense, contains such negative matter; and where the negative allegation involves a charge of criminal neglect of duty, whether official or otherwise, and again in the 17th Ohio State, 453, it is said a negative

averment in the matter of an exception in a statute is not requisite in an indictment unless the matter of such exception enter into and become a part of the description of the offense.

And in the 4th Ohio State it was held that that rule was so applicable to all cases unless the subject matter to the negative averment lies so peculiarly within the knowledge of the defendant that it could be readily and easily proved by him, and cannot without great inconvenience be proved by the party making the averment, "unless the proof is practically beyond the reach of the government and clearly within the power of the accused," says Judge RANNEY.

We hold that the demurrer should have been sustained and the judgment should therefore be reversed and remanded to the court of common pleas.